*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DESIRAE MCKIE GLATFELTER,

Defendant-Appellant.

UNPUBLISHED
August 27, 2019

No. 340308
Kent Circuit Court
LC No. 16-011421-FH

Before: K. F. KELLY, P.J., and FORT HOOD and REDFORD, JJ.

PER CURIAM.

Defendant, Desirae McKie Glatfelter, appeals as of right her conviction of aggravated domestic violence in violation of MCL 750.81a(2). The jury acquitted defendant of the charge of mayhem, MCL 750.397. The trial court sentenced defendant to 365 days' imprisonment.

This Court previously remanded this case for an evidentiary hearing[1] concerning defendant's claims of ineffective assistance of counsel.[2] The trial court conducted an evidentiary hearing and ruled that defendant's trial counsel provided effective assistance. Defendant renewed her ineffective assistance of counsel claims and also asserted that the trial court erred by ordering her to pay restitution in an amount unsupported by documentation. Following oral argument by the parties, we directed the parties to file supplemental briefs addressing (1) whether the trial court abused its discretion by denying defendant's request to present testimony by a rebuttal expert witness, (2) whether the trial court erred by not placing on the record its evidentiary rulings made off the record regarding the admissibility of police body camera footage, and (3) whether aggravated domestic violence, MCL 750.81a(2), constitutes a necessarily included lesser offense of mayhem, MCL 750.397, and if the trial court erred by

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[2] See *People v Glatfelter*, unpublished order of the Court of Appeals, entered May 18, 2018 (Docket No. 340308).

allowing the jury to consider convicting defendant of aggravated domestic violence despite not being charged with violation of MCL 750.81a(2).[3] The parties having done so, we now consider defendant's appeal. We reverse defendant's conviction because of ineffective assistance of counsel for the reasons set forth in this opinion.

## I. BACKGROUND

The charges against defendant stemmed from a domestic dispute with her live-in boyfriend, Aaron Hollowell. Defendant accused Hollowell of cheating with another woman and when he denied her accusation she became irate. Hollowell testified that during the dispute he attempted to calm her down by physically restraining her in a "bear hug." He stated that, while doing so, he also administered a French kiss, something he claimed that he had done previously during what he described as sensitive moments in their four-year relationship. In this instance, however, defendant responded to Hollowell's unconsented contact by biting off part of his tongue.

Police officers wearing body cameras arrived at the scene and recorded their interactions with defendant. The videos recorded her initial agitated state, her description of Hollowell's violent behavior toward her that precipitated her biting his tongue after he forcibly inserted it into her mouth, the officers' request that she calm down, her appropriate response, then her angry emotional response when she learned that the officers intended to arrest her, and not Hollowell, and take her away from her children. The officer who took defendant into custody also recorded transporting defendant to the jail and the video recorded defendant's increasing hostility toward the officers. The prosecution charged defendant with mayhem in violation of MCL 750.397. At trial, she defended on the ground that she acted in self-defense.

At defendant's trial, Hollowell testified regarding the incident. He admitted that he gave defendant a bear hug and put his tongue into her mouth before she bit off a portion of it. During direct examination, Hollowell minimized his physical interaction with defendant but on cross-examination he admitted that he put his hands on defendant's body including onto her face and shoulders. He also admitted that defendant had not been calm when he kissed her. Further, he admitted that about eight months before, he pleaded guilty to a domestic violence offense stemming from an incident in which he and defendant argued and he dislocated her shoulder by forcing her to the ground.

The prosecution also called as witnesses three of the responding police officers. The jury viewed redacted body camera video footage of police interaction with defendant from their arrival at defendant's home until the police placed defendant into a jail holding cell. In the videos, defendant told the officers that Hollowell had a history of domestic abuse. She told the officers that Hollowell made undesired sexual advances toward her that evening and put his hands all over her and in her face. She explained that when something came into her mouth, she believed it was Hollowell's finger and she "just bit."

---

[3] See *People v Glatfelter*, unpublished order of the Court of Appeals, entered June 20, 2019 (Docket No. 340308).

After the conclusion of the prosecution's case-in-chief, defense counsel requested permission to present a rebuttal witness, an expert in domestic violence and sexual assault victim behavior. The trial court denied this request because it concluded that the proposed testimony would not differ from the proposed testimony of another expert for whom defense counsel previously failed to provide the required pretrial notice resulting in the trial court's exclusion ruling before trial. Defendant did not testify. The prosecution argued that the jury should find defendant guilty of mayhem. The jury, however, found defendant not guilty of mayhem but found her guilty of aggravated domestic violence.

In this appeal, defendant raises two claims of ineffective assistance of counsel: (1) that defense counsel failed to object to the admission of the police body camera footage under MRE 403; and (2) that defense counsel failed to provide the mandatory pretrial notice for calling an expert witness which impacted the outcome of her trial. Defendant also claims that the trial court erred by ordering her to pay $3,000 in restitution because the amount lacked evidentiary support.

## II. INEFFECTIVE ASSISTANCE

### A. STANDARD OF REVIEW

Whether defense counsel performed ineffectively is a mixed question of law and fact; we review for clear error the trial court's findings of fact and review de novo questions of constitutional law. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). "This Court reviews de novo whether defense counsel's acts or omissions fell below an objective standard of reasonableness under prevailing professional norms and whether, without the error, the result of the proceedings would have been different." *People v McFarlane*, 325 Mich App 507, 527; 926 NW2d 339 (2018) (citation omitted). In reviewing findings of fact, "[r]egard shall be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *People v Dendel*, 481 Mich 114, 130; 748 NW2d 859 (2008) (quotation marks, citation, and alteration omitted), amended 481 Mich 1201 (2008). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, on the whole record, is left with the definite and firm conviction that a mistake has been made." *Id.* (quotation marks and citation omitted).

### B. ANALYSIS

To obtain a new trial based on a claim of ineffective assistance of counsel, "defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Trakhtenberg*, 493 Mich at 51 (citation omitted). "In examining whether defense counsel's performance fell below an objective standard of reasonableness, a defendant must overcome the strong presumption that counsel's performance was born from a sound trial strategy." *Id.* at 52. "Defense counsel is given wide discretion in matters of trial strategy because many calculated risks may be necessary in order to win difficult cases." *People v Unger*, 278 Mich App 210, 242; 749 NW2d 272 (2008) (citation omitted). "Decisions regarding what evidence to present, whether to call witnesses, and how to question witnesses are presumed to be matters of trial strategy." *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212

(2008). This Court does not second-guess counsel on matters of trial strategy, nor does it assess trial counsel's competence with the benefit of hindsight. *Id*.

## 1. FAILURE TO OBJECT TO THE BODY CAMERA VIDEOS AT TRIAL

For purposes of this appeal, defendant concedes the relevance of the body camera video evidence but argues instead that the video footage contained unfairly prejudicial matter that required her counsel to object to its admission at trial under MRE 403, and by not doing so, defense counsel failed to provide effective assistance. We agree.

Under MRE 403, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." "[A]ll evidence offered by the parties is 'prejudicial' to some extent, but the fear of prejudice does not generally render the evidence inadmissible. It is only when the probative value is substantially outweighed by the danger of unfair prejudice that evidence is excluded." *People v Mills*, 450 Mich 61, 75; 537 NW2d 909, (1995); mod on other grounds 450 Mich 1212 (1995). For evidence to be unfairly prejudicial under MRE 403, it must "adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock." *People v Fisher*, 449 Mich 441, 452; 537 NW2d 577 (1995) (quotation omitted).

Video evidence, like police body camera video footage, may be relevant and admissible as part of the res gestae of the crime. "Res gestae are circumstances, facts and declarations which so illustrate and characterize the principal fact as to place it in its proper effect." *People v Bostic*, 110 Mich App 747, 749; 313 NW2d 98 (1981). As explained by our Supreme Court in *People v Delgado*, 404 Mich 76, 83; 273 NW2d 395 (1978),

> It is the nature of things that an event often does not occur singly and independently, isolated from all others, but, instead, is connected with some antecedent event from which the fact or event in question follows as an effect from a cause. When such is the case . . . the principle that the jury is entitled to hear the "complete story" ordinarily supports the admission of such evidence.

This is because "it is essential that prosecutors and defendants be able to give the jury an intelligible presentation of the full context in which disputed events took place." *People v Sholl*, 453 Mich 730, 741; 556 NW2d 851 (1996). Our Supreme Court recently reiterated "that *Delgado* and *Sholl* provide firm support for the notion that evidence meeting their 'res gestae' definition is potentially relevant and admissible." *People v Jackson*, 498 Mich 246, 268; 869 NW2d 253 (2015). Among evidence admissible as part of the res gestae, "[i]t is elementary that the acts, conduct, and demeanor of a person charged with crime at the time of, or shortly before or after, the offense is claimed to have been committed, may be shown as a part of the res gestae." *People v Savage*, 225 Mich 84, 86; 195 NW 669 (1923).

In this case, the prosecution desired to admit and use at trial the police officers' body camera footage. The record reflects that issues arose regarding the admissibility of the videos and discussions took place off the record before trial between the parties which resulted in the

-4-

redaction of footage to eliminate irrelevant or inadmissible portions. At trial, in anticipation of the prosecution's intended use of video footage, the trial court asked defense counsel whether she reviewed the redacted videos. Defense counsel protested that the prosecution gave the defense the redacted recordings only just that morning. Defense counsel objected to the late delivery but indicated that, after review of the law and having discussions with the prosecution, the parties agreed to the use of the redacted videos. The trial court then asked whether defense counsel desired further redaction to which she responded, "we'd like none of them used," but stipulated to the use providing that she had the opportunity to review them during the afternoon to determine if the defense had any further issues. The record reflects that defense counsel did not expressly object to the admission and use of the multiple videos on MRE 403 grounds.

During the evidentiary hearing conducted by the trial court following remand, defendant argued that her trial counsel provided ineffective assistance by failing to object to the body camera videos under MRE 403. Defendant's trial counsel testified that she believed that she had objected to the admission of the videos on two grounds, relevance and prejudice. She testified that the prosecution opposed the objections and they were overruled. She indicated that before trial, she raised such objections which resulted in the review and redaction of the videos by her and the prosecution. She recalled that at trial, she also objected to the redacted videos' admission because she had not had the opportunity to review them. Defendant's trial counsel testified further, however, that she concluded that the video footage, despite not showing defendant at her best, nevertheless, presented evidence favorable to defendant by showing her concern for her children and her side of the story, and by showing that she had been calm until informed of her arrest and that nothing was going to happen to Hollowell who assaulted her.

The trial court observed that the record did not reflect that defense counsel objected on MRE 403 grounds. Defendant's trial counsel then admitted that she did not object at trial on MRE 403 grounds but stated that she did so as a matter of trial strategy because she believed that the jury would actually see defendant's behavior and recognize her appropriateness under the circumstances which substantiated her defense that she had been the victim and only acted in self-defense.

The trial court concluded that defendant's trial counsel made a strategic determination not to object to the video evidence because it portrayed defendant as the victim. The trial court ruled that defendant failed to submit evidence that the evidentiary decision impacted the jury's verdict requiring a new trial. Therefore, the trial court concluded that defendant failed to establish that her counsel provided her ineffective assistance in relation to the video evidence.

Review of the police officers' body camera videos reveals that significant portions of the footage presented to the jury showed defendant's highly charged emotional response and escalating lack of civility once she learned that she would be arrested. Although some of the video footage featured conduct potentially relevant and admissible as part of the res gestae of the charged crime, the repetition of events from different body camera vantage points did nothing to lend greater clarity for the benefit of the jury. Much of the footage cast defendant in a particularly bad light that warranted an objection by defense counsel on the ground that it prejudiced defendant. The record reflects that the trial court permitted the prosecution to present four duplicative videos from the body cameras: two each lasting approximately 17 minutes long, one approximately 11 minutes long, and one about 14 minutes in duration. The trial court also

permitted the presentation of approximately nine minutes of footage related to delivering defendant to jail and placing her in a cell, none of which pertained to the charged offense, had temporal proximity to the offense, or explained the circumstances surrounding the offense.

Although defense counsel objected off the record before trial to the admission of the video evidence, and stated that defendant did not want any of it admitted, we conclude that defendant's trial counsel's performance fell below an objective standard of reasonableness by not objecting to its admission on MRE 403 prejudice grounds. In so doing, she failed to place the trial court on alert by a necessary objection so that it could conduct the balancing test required under MRE 403 to determine whether the probative value of the evidence was substantially outweighed by its prejudicial effect.

We are cognizant that portions of the video evidence presented defendant's side of the story when she told the responding officers what precipitated her action, which supported her self-defense theory at trial, that Hollowell assaulted her first and she bit him in response to his aggressive unconsented actions. Portions also showed that defendant properly responded to directions from the officers by respectfully calming down when asked to do so. Additionally, the video evidence depicted defendant expressing her primary concern for her children's welfare and showed that her demeanor only changed when the officers indicated that they intended to arrest her and not Hollowell.

The record reflects that defense counsel emphasized these positive features as part of presenting defendant's defense, but counsel's acquiescence to the admission of repetition of the portions that depicted defendant's escalated emotional response long after the commission of the charged offense and her transport to jail without objection unfairly prejudiced defendant's case by injecting considerations extraneous to the case highly likely to invoke the jury's bias, sympathy, anger, or shock. Under prevailing professional norms, defendant's trial counsel's omission fell below an objective standard of reasonableness because she should have sought the exclusion of the inflammatory portions under MRE 403. The footage did not serve to enlighten the jury regarding the res gestae and its probative value was substantially outweighed by the danger of unfair prejudice. Moreover, the duplicative nature of the evidence constituted the needless presentation of cumulative evidence that also served to invoke the jury's bias, sympathy, anger, or shock.

The record also reflects that, during closing argument, the prosecution showed nine portions of the video footage that cast defendant in a particularly bad light without any objection from defense counsel. Defense counsel's conduct fell below an objective standard of reasonableness and the admission of the body camera video evidence likely caused the jury to decide defendant's guilt on an improper basis. We conclude, therefore, that but for counsel's deficient performance, a reasonable probability exists that the outcome of defendant's trial would

have been different. Therefore, the trial court erred by ruling that defense counsel provided effective assistance in this regard.[4]

## 2. FAILURE TO TIMELY DISCLOSE DEFENSE EXPERTS

Defendant also argues that defense counsel provided ineffective assistance by failing to timely provide the requisite notice for calling an expert witness and her inability to call experts because of untimely disclosure affected the outcome of this case. We agree. We also find that the trial court abused its discretion by not permitting defendant to present the testimony of an unlisted expert rebuttal witness to assist the jury to understand how victims of domestic violence act under certain circumstances so that they could be fully enabled to decide whether defendant acted justifiably in self-defense or committed the charged offense.

Generally, all relevant evidence is admissible. MRE 402; *People v Starr*, 457 Mich 490, 497; 577 NW2d 673 (1998); *People v Coy*, 258 Mich App 1, 13; 669 NW2d 831 (2003). Evidence is relevant if it has any tendency to make the existence of a fact which is of consequence to the action more probable or less probable than it would be without the evidence. MRE 401; *People v Crawford*, 458 Mich 376, 387-388; 582 NW2d 785 (1998); *People v Gonzalez*, 256 Mich App 212, 218; 663 NW2d 499 (2003). "Under this broad definition, evidence is admissible if it is helpful in throwing light on any material point." *People v Aldrich*, 246 Mich App 101, 114; 631 NW2d 67 (2001) (citation omitted). Decisions regarding whether to call witnesses are presumed to be matters of trial strategy. *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999).

We review for an abuse of discretion a trial court's decision to exclude evidence. *People v Figgures*, 451 Mich 390, 398; 547 NW2d 673 (1996). A trial court abuses its discretion if its decision falls outside the range of reasonable and principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). Before admitting expert testimony, a trial court must determine that the evidence is from a recognized discipline, is relevant and helpful to the trier of fact, and is presented by a witness qualified by knowledge, skill, experience, training, or education. MRE 702; *People v Beckley*, 434 Mich 691, 711; 456 NW2d 391 (1990). Trial courts have discretion regarding the admission of rebuttal testimony. *Nolte v Port Huron Area School Dist Bd of Ed*, 152 Mich App 637, 644; 394 NW2d 54 (1986). "Rebuttal testimony is used to contradict, explain, or refute evidence presented by the other party in order to weaken it

---

[4] Respecting our request for supplemental briefing regarding whether the trial court erred by not placing on the record its evidentiary decisions regarding the admissibility of the body camera footage, the prosecution and defense counsel indicate that Michigan law does not impose a duty upon trial courts to place on the record evidentiary rulings made in chambers. Defense counsel states that the record in this case lacks clarity whether evidentiary objections were made by defendant's trial counsel during discussions in chambers. Defense counsel concedes, however, that regardless whether evidentiary discussions were held in chambers that resulted in evidentiary decisions, defendant's trial counsel had the duty to preserve any issue for appeal by making a record during the trial court proceedings. We agree and find that defendant's trial counsel's conduct in this regard also fell below an objective standard of reasonableness.

or impeach it." *Winiemko v Valenti*, 203 Mich App 411, 418; 513 NW2d 181 (1994). "The decision whether to allow an undisclosed witness to testify is a matter within the trial court's discretion." *Pastrick v Gen Tel Co of Mich*, 162 Mich App 243, 245; 412 NW2d 279 (1987). However, "[t]rial courts should not be reluctant to allow unlisted witnesses to testify where justice so requires, particularly with regard to rebuttal witnesses." *Id.* (citation omitted).

In *Figgures*, 451 Mich at 399, our Supreme Court explained that the test for admission of rebuttal evidence is whether the evidence is properly responsive to evidence introduced or a theory developed by the opposing party and as long as evidence is responsive to evidence presented by the opposing party, it is properly classified as rebuttal, even if it would overlap evidence admitted in the proffering party's case-in-chief. In *People v Kowalski*, 492 Mich 106, 123-124; 821 NW2d 14 (2012), while considering the propriety of permitting expert testimony, our Supreme Court reflected approvingly upon the admission of expert testimony in cases to explain human behavior that seems contrary to common sense assumptions:

> In *People v Peterson*, for example, we observed that victims of child sexual abuse sometimes exhibit behavior, such as delayed reporting of abuse or retraction of accusations, that psychologists understand to be common among abuse victims but that jurors might interpret as being inconsistent with abuse. [*People v Peterson*, 450 Mich 349, 363; 537 NW2d 857 (1995).] We held that if the victim's credibility is attacked by highlighting this behavior, then a qualified expert may explain the consistencies between the behavior of that victim and that of other victims of child sexual abuse. We further explained that such testimony was helpful to address "behavioral traits that may, by their very nature, create confusion in the minds of the jury." [*Id.* at 375.]

> Likewise, in *People v Christel*, we observed that expert testimony is needed when a "witness'[s] actions or responses are incomprehensible to average people." [*People v Christel*, 449 Mich 578, 592; 537 NW2d 194 (1995),] Thus, we permitted a prosecution expert to testify about battered woman syndrome and how a victim of domestic violence might "deny, repress, or minimize the abuse. . . ." [*Id.* at 585.] We held that this type of testimony was "relevant and helpful when needed to explain a complainant's actions. . . ." [*Id.* at 580.]

> The common theme in these cases is that certain groups of people are known to exhibit types of behavior that are contrary to common sense and are not within the average person's understanding of human behavior. In these instances, an expert's specialized testimony may enlighten the jury so that it can intelligently evaluate an experience that is otherwise foreign.

*Kowalski* stands for the proposition that expert testimony is particularly significant in cases where the average person may not understand counterintuitive conduct by a defendant because it can help jurors understand how and why a defendant may act under certain circumstances. *Kowalski*, 492 Mich at 126-127. Our Supreme Court opined:

> The exclusion of such expert testimony when it meets all the requirements of our evidentiary rules could, in some instances, hinder the jury in its task because

without the enlightenment of expert opinion the jury's ultimate determination may not be arrived at intelligently. [*Id*. at 127.][5]

In this case, the record indicates that before trial, defendant's trial counsel considered presenting expert testimony regarding matters pertaining to the effects of domestic violence on victims. Defense counsel provided late notice identifying one expert witness which resulted in the trial court's exclusion of the witness. After the prosecution's case-in-chief, defense counsel sought to present a rebuttal expert witness's testimony. The trial court surmised that the proposed rebuttal expert's testimony would have featured similar testimony that defense counsel sought to introduce through the untimely identified and excluded expert. The trial court denied defense counsel's request to present the rebuttal expert because defense counsel knew of the evidence the prosecution intended to present and had the ability to identify defendant's witnesses, including the rebuttal expert witness, in a timely fashion. The trial court opined that fairness required defense counsel to give notice to opposing counsel and her failure to do so required exclusion of the rebuttal expert testimony.

At the evidentiary hearing following remand, defendant's trial counsel testified that initially she did not anticipate presenting expert testimony; but, as the case developed, she felt that an expert might be needed to explain the evidence and establish that Hollowell had been the aggressor and defendant the victim. She asserted that during the prosecution's case, she decided that an expert in sexual assault and victims' reactions would assist the jury to understand what the body camera videos presented and to rebut the prosecution's theory of the case. Defendant's trial counsel affirmed that the trial court excluded defendant's original expert witness for untimely disclosure. Defendant's trial counsel stated that the trial court denied defendant's request to present rebuttal expert testimony on the ground of untimely disclosure but she testified that she believed that rebuttal witnesses were not required to be disclosed at the beginning of a case because the need for rebuttal witnesses emerged during the course of trial. She testified that in this case, as a matter of trial strategy, as the prosecution's case developed through the testimony of witnesses and rulings that were made, the need arose for an expert to explain defendant's reactions.

Defendant's proposed rebuttal expert testified at the evidentiary hearing regarding the testimony she would have given had she been permitted to testify at trial. She testified generally

---

[5] We note that since oral argument in the matter at bar, our Supreme Court issued its consolidated opinion in *People v Thorpe*, ___ Mich ___; ___ NW2d ___ (2019), in which the Court reversed two convictions related to child sexual abuse in which the trial courts allowed the prosecution, in one case, to offer expert testimony about the percentage of times children lie about sexual abuse, and in the other, expert testimony of a diagnosis of probable pediatric sexual abuse.

Our review of the *Thorpe* opinion and a comparison of the expert testimony that could have been offered in the matter at bar on behalf of defendant either as evidence in a case-in-chief or in rebuttal to the prosecution's case-in-chief, lead us to conclude the *Thorpe* opinion would not exclude the proffered defense expert evidence.

regarding victims of sexual abuse and domestic violence and how they respond differently to different circumstances. She explained that some victims respond to abuse with force or violence for different purposes and some did so because of their perception of an imminent threat. She testified that some victims' conduct met the legal definition of self-defense while other victims' responses did not always meet the legal definition of self-defense. She stated that she would have testified regarding defensive conduct exhibited by victims in circumstances such as those presented in this case.

The trial court found that the expert's testimony failed to explain whether defendant's behavior in this case met the legal definition of self-defense. The trial court declined to substitute its judgment in hindsight regarding defense counsel's trial strategy and did not make a finding that defense counsel's conduct fell below an objective standard of reasonableness. Nevertheless, the trial court found that defense counsel did not provide ineffective assistance because defendant failed to establish that the outcome of the case would have been different had either of defendant's proposed experts testified. The trial court concluded that defendant failed to establish that the lack of expert testimony had an outcome-determinative effect.

An attorney's decision whether to retain expert witnesses generally is a matter of trial strategy. *People v Ackerman*, 257 Mich App 434, 455; 669 NW2d 818 (2003). The "failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense." *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012) (quotation marks and citation omitted).

In this case, defendant's trial counsel's failure to timely disclose expert witnesses fell below an objective standard of reasonableness under prevailing professional norms. The record reflects that defense counsel had access to all of the evidence the prosecution intended to present long before trial that should have enabled defense counsel to anticipate the prosecution's case-in-chief. Such advance knowledge afforded defense counsel an opportunity to identify and disclose defense witnesses including expert witnesses in a timely manner. The record does not reflect that the prosecution presented any unknown evidence to defense counsel's surprise. Defense counsel simply failed to timely disclose defendant's proposed experts and provided no reasonable explanation in her testimony at the evidentiary hearing that justified her failure to meet the trial court's deadline for expert witness disclosure. Such conduct lacked reasonableness and the record in this case does not support a conclusion that the failure arose from a sound trial strategy.

The trial court erred by not finding that defense counsel provided ineffective assistance by failing to timely disclose experts. The proposed expert witness testimony could have enabled counsel to argue to the jury how victims of domestic violence act counterintuitively in some circumstances, a particularly important component of defendant's theory of defense. Presentation of such expert testimony likely would have enabled the jury members in this case to understand how and why defendant acted as she did under the circumstances. The jury would have been fully informed so that they could intelligently decide whether the prosecution proved beyond a reasonable doubt defendant's guilt. We conclude that, but for defendant's trial counsel's defective performance, a high probability exists that the outcome in this case would have been different. Accordingly, we find that defendant's trial counsel provided defendant ineffective assistance in this regard.

## 3. LESSER INCLUDED OFFENSE INSTRUCTION

On the third day of trial, after the close of the prosecution's case-in-chief, the prosecution announced that it intended to request a "lesser alternative charge of aggravated domestic violence" and promised to inform the trial court of the elements of that offense. Defendant had not being charged with aggravated domestic violence, MCL 750.81a(2), and the prosecution never moved to amend the felony information or felony complaint. The record reflects that no discussion regarding instructing the jury on a lesser offense took place and defendant's trial counsel made no objection. The next morning, the trial court presented to the parties a copy of the final version of the jury instructions the trial court intended to use. The prosecution advised the trial court that the proposed instructions were satisfactory. Defendant's trial counsel objected to the mayhem instruction and the trial court denied the objection. The trial court asked, "Will there be anything more before I speak?" Defendant's trial counsel responded, "No sir. Thank you."

The trial court instructed the jury that they could consider convicting defendant of aggravated domestic violence and that aggravated domestic violence was a lesser included offense of mayhem. The trial court instructed the jury regarding the elements of aggravated domestic violence. The jury acquitted defendant of mayhem but found her guilty of the uncharged offense of aggravated domestic violence.

We ordered the parties to supplement their briefing to address whether aggravated domestic violence, MCL 750.81a(2), constitutes a necessarily included lesser offense of mayhem, MCL 750.397, and if the trial court erred by allowing the jury to consider convicting defendant of aggravated domestic violence despite not being charged with violation of MCL 750.81a(2). The prosecution argues that defendant's trial counsel explicitly approved of the jury instructions and waived this issue. Defendant contends that aggravated domestic violence is not a necessarily included lesser offense of mayhem and that the trial court erred by instructing the jury on aggravated domestic violence and allowing the jury to convict her of that uncharged offense.

In *People v Carter*, 462 Mich 206, 214-216; 612 NW2d 144 (2000), our Supreme Court explained the distinction between waiver that extinguishes any error and forfeiture of a claim of error by failure to object as follows:

> Waiver has been defined as the intentional relinquishment or abandonment of a known right. It differs from forfeiture, which has been explained as the failure to make the timely assertion of a right. One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error. Mere forfeiture, on the other hand, does not extinguish an error.

The record reflects that defendant's trial counsel did not expressly approve the proposed jury instructions and thereby waive objection to any instructional error, but she acquiesced and failed to raise an objection regarding the aggravated domestic violence instruction. Defendant's failure to object resulted in the forfeiture of a claim of error in this regard. Respecting our request for supplemental briefing regarding the trial court's instructing the jury on aggravated

-11-

domestic violence, we find that defendant's trial counsel's conduct in this regard also fell below an objective standard of reasonableness.

"A defendant has the right to have a properly instructed jury consider the evidence against him or her, and it is the trial court's role to clearly present the case to the jury and to instruct it on the applicable law." *People v Henderson*, 306 Mich App 1, 4; 854 NW2d 234 (2014) (quotation marks and citation omitted); see also *People v Czuprynski*, 325 Mich App 449; 926 NW2d 282 (2018) (reversing defendant's conviction because of improper instruction of the jury). "The instructions must include all elements of the charged offenses and any material issues, defenses, and theories if supported by the evidence." *People v McGhee*, 268 Mich App 600, 606; 709 NW2d 595 (2005).

Under the common law and the United States Constitution, a defendant cannot be held to answer a charge not contained in the indictment brought against her. *Schmuck v United States*, 489 US 705, 717; 109 S Ct 1443; 103 L Ed2d 734 (1989). A defendant has a right to notice of the charges against her. *Id*. at 718. However, a defendant is deemed on notice when charged, that she may be found guilty of a necessarily included lesser offense of the charged offense. *People v Cornell*, 466 Mich 335, 359; 646 NW2d 127 (2002), overruled in part on other grounds by *People v Mendoza*, 468 Mich 527; 664 NW2d 685 (2003).

"[A] requested instruction on a necessarily included lesser offense is proper if the charged greater offense requires the jury to find a disputed factual element that is not part of the lesser included offense and a rational view of the evidence would support it." *Cornell*, 466 Mich at 357. "Necessarily included lesser offenses are offenses in which the elements of the lesser offenses are completely subsumed in the greater offense." *People v Nickens*, 470 Mich 622, 626; 685 NW2d 657 (2004), quoting *Mendoza*, 468 Mich at 532 n 3; see also *People v Nyx*, 479 Mich 112, 121; 734 NW2d 548 (2007). Therefore, an offense is a necessarily included lesser offense when: (1) it is impossible to commit the greater offense without first committing the lesser offense and (2) conviction of the greater offense requires the jury to find a disputed factual element that is not part of the lesser offense. *People v Martin*, 271 Mich App 280, 289; 721 NW2d 815 (2006).

Under MCL 750.397, the offense of mayhem is defined as:

Mayhem—Any person who, with malicious intent to maim or disfigure, shall cut out or maim the tongue, put out or destroy an eye, cut or tear off an ear, cut or slit or mutilate the nose or lip, or cut off or disable a limb, organ or member, of any other person, and every person privy to such intent, who shall be present, aiding in the commission of such offense, shall be guilty of a felony, punishable by imprisonment in the state prison not more than 10 years, or by fine of not more than 5,000 dollars.

A mayhem conviction under the facts of this case required proof that: (1) defendant, with malicious intent to maim or disfigure, (2) cut out or maimed the victim's tongue.

MCL 750.81a(2), respecting aggravated domestic violence, provides in relevant part:

[A]n individual who assaults . . . an individual with whom he or she has or has had a dating relationship, an individual with whom he or she has had a child in common . . . without a weapon and inflicts serious or aggravated injury upon that individual without intending to commit murder or to inflict great bodily harm less than murder is guilty of a misdemeanor punishable by imprisonment for not more than 1 year or a fine of not more than $1,000.00, or both.[6]

A conviction of aggravated domestic violence required proof that: (1) defendant assaulted without a weapon (2) an individual with whom she had a dating relationship or had a child in common, (3) inflicted serious or aggravated injury upon that individual, (4) without intending to commit murder or intending to inflict great bodily harm less than murder.

Mayhem, as defined by MCL 750.397, does not include the elements of aggravated domestic violence set forth in MCL 750.81a(2). All of the elements of aggravated domestic violence are not completely subsumed in the offense of mayhem. Plainly, it is possible to commit mayhem without first committing aggravated domestic violence. Therefore, aggravated domestic violence is not a necessarily included lesser offense of mayhem. Accordingly, defendant's trial counsel should have objected to the prosecution's request for the aggravated domestic violence instruction and alerted the trial court of the impropriety of giving such instruction. Therefore, we find that defendant's trial counsel's conduct in this regard also fell below an objective standard of reasonableness.

III. RESTITUTION

A. STANDARD OF REVIEW

"This Court generally reviews an order of restitution for an abuse of discretion." *People v Raisbeck*, 312 Mich App 759, 768; 882 NW2d 161 (2015) (quotation marks and citation omitted). "The trial court's findings of fact are reviewed for clear error." *People v Fawaz*, 299 Mich App 55, 64; 829 NW2d 259 (2012) (citation omitted). "Clear error is present when the reviewing court is left with a definite and firm conviction that an error occurred." *Id*. at 60 (quotation marks and citation omitted).

B. ANALYSIS

Defendant argues that the trial court erred by ordering her to pay $3,000 in restitution as part of defendant's judgment of sentence. The prosecution concedes error and states that defendant is entitled to remand for a restitution hearing. We agree.

---

[6] Subpart (4) provides:

As used in this section, "dating relationship" means frequent, intimate associations primarily characterized by the expectation of affectional involvement. This term does not include a casual relationship or an ordinary fraternization between 2 individuals in a business or social context.

Under the Crime Victim's Rights Act (CVRA), restitution to crime victims is mandatory, not discretionary. See *Fawaz*, 299 Mich App at 65. The CVRA requires that the trial court order that a defendant make full restitution to any victim of the defendant's course of conduct that gives rise to the conviction or the victim's estate. *Id*., quoting MCL 780.766(2). MCL 780.767 provides the relevant factors for consideration and the burden of proof in determining the amount of restitution:

> (1)  In determining the amount of restitution to order under [MCL 780.766], the court shall consider the amount of the loss sustained by any victim as a result of the offense.

> (2)  The court may order the probation officer to obtain information pertaining to the amounts of loss described in subsection (1). The probation officer shall include the information collected in the presentence investigation report or in a separate report, as the court directs.

> (3)  The court shall disclose to both the defendant and the prosecuting attorney all portions of the presentence or other report pertaining to the matters described in subsection (1).

> (4)  Any dispute as to the proper amount or type of restitution shall be resolved by the court by a preponderance of the evidence. The burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the prosecuting attorney.

At her sentencing, defendant objected to the amount of restitution requested by the prosecution because no evidence supported it. The trial court noted on the record that no supporting evidence had been provided by the victim and stated that if a hearing was necessary one would be provided. The record, however, reflects that the trial court never held a hearing to make findings of fact and determine whether the prosecution met its burden to prove the alleged amount of loss sustained by the victim before ordering defendant to pay $3,000 in restitution. Because defendant properly objected to the amount of restitution, the trial court should have conducted an evidentiary hearing. Accordingly, defendant is entitled to an evidentiary hearing on the restitution amount. Therefore, we vacate the trial court's restitution award.

We reverse defendant's conviction of aggravated domestic violence and remand for a new trial. We do not retain jurisdiction.

/s/ Kirsten Frank Kelly
/s/ Karen M. Fort Hood
/s/ James Robert Redford